UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                          :
VICTOR PEREZ,
                                                          :
                    Petitioner,                                    REPORT AND
                                                          :        RECOMMENDATION
              -v.-                                                 13 Civ. 1428 (WHP)(GWG)
                                                          :
SUPERINTENDENT HAROLD GRAHAM,
                                                          :
                    Respondent.
                                                          :
------------------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Victor Perez, currently an inmate at Five Points Correctional Facility in Romulus, New

York, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Perez

was convicted of two counts of robbery in the first degree, N.Y. Penal Law § 160.15, and one

count of robbery in the second degree, N.Y. Penal Law § 160.10, following a jury trial in New

York State Supreme Court in June 2008.  After trial, Perez was sentenced to two concurrent

terms of twenty-five years in prison for the first-degree robbery counts and a concurrent term of

fifteen years in prison for the second-degree robbery count, to be followed by five years of post-

supervision release.  For the following reasons, Perez's petition should be denied.

I.  BACKGROUND

      A detailed description of the evidence presented at trial is not necessary to a resolution of

this case.  Accordingly, we summarize the trial evidence only briefly.

      On May 15, 2007, Rodney Paige was robbed in Lower Manhattan by three men who

followed and approached him on bicycles, during the course of which he was shot three times.

See Appellate Division Brief of Defendant-Appellant Victor Perez (annexed as Ex. C to

Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed July 17, 2013 (Docket

# 15) ("Gill Decl.")) ("Def. App. Br."), 3-4.  The robbery and shooting was witnessed by Ashley

and Joshua Bermudez, residents of a nearby fifth-floor apartment.  Id. at 4.  In addition, another

witness to the incident named Thomas Braunson told police at the scene that Perez, whom he

knew from the neighborhood, was one of the robbers.  (Braunson: Tr. 240-41, 265).[1]  Braunson

then returned to the police precinct and gave the police Perez's name and address.  (Braunson:

Tr. 253; Isolano: Tr. 340-41).  Braunson, who had multiple prior convictions and pending

charges, testified at trial pursuant to a cooperation agreement.  (Braunson: Tr 257-59).

Paige reported to police that the men who shot him were on bicycles and that one of them

had a yellow shirt and braids.  (Collins: Tr. 272).  Shortly thereafter, an officer stopped an

individual named Joseph Ramirez who was in the vicinity and matched that description.

(Collins: Tr. 173-75).  Ramirez had several cellphones on him, which were confiscated by the

police.  (Collins: Tr.174, 185).  That evening, one of the phones rang and the caller identification

indicated "Red," Perez's nickname.  (Isolano: Tr. 345-46).  The police later determined that the

number belonged to Perez's cellphone.  (Isolano: Tr. 345-46).  In the 30 days before the

shooting, Perez and Ramirez had called each other 36 times.  (Cannata: Tr. 427).

Roughly three months after the shooting, Perez turned himself in to police at the Seventh

Precinct.  Def. App. Br. at 5.  Perez was indicted on November 1, 2007, for attempted second-

degree murder, first-degree assault, two counts of first-degree robbery, and one count of second-

---

[1]  "Tr." refers to the transcript of the portion of the trial held on June 16, 2008, which is contained in Docket # 15-4 and Docket # 21.  The June 16 transcript begins on ECF page "10 of 173" in Docket # 21 and continues on ECF page "1 of 344" in Docket # 15-4.  Although the trial took place over several days, this is the only day of trial proceedings cited in this Report and Recommendation.  "S" refers to the transcript of the sentencing, which is contained in Docket # 15-4 starting at ECF page "310 of 344."  "W" refers to the transcript of the suppression hearing, which is contained in Docket # 15- 2 starting at ECF page "1 of 349."

degree robbery.  See Appellate Division Brief for Respondent (annexed as Ex. D to Gill Decl.) ("Resp. App. Br." at 3.  Perez was convicted at trial of two counts of robbery in the first degree and one count of robbery in the second degree.  See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed Feb. 28, 2013 (Docket # 2) ("Pet."), 2.

    A.  The Lineup and *Wade* Hearing

The police held a lineup about six week after Perez turned himself in.  See Def. App. Br. at 9.  Paige positively identified Perez at the lineup.  Id. at 12.  Ashley Bermudez stated "I think it's number one," referring to Perez's position in the lineup.  Id.  Joshua Bermudez was unable to identify anyone in the lineup.  Id.

On January 8, 2008, a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), was held.  Perez testified at the hearing as did Detective Nicholas Isolano, the officer assigned to investigate the robbery and shooting of Paige.  (Isolano: W. 104).  Isolano testified on direct examination that three people viewed the lineup: Paige and two witnesses whom he did not identify by name.  (Isolano: W. 117).  Isolano testified that when he brought Perez into the precinct for the lineup, he and Perez "came in through the rear of the building into the elevator and up to the second floor," and that from where the witnesses were situated in the precinct, they would not have had an opportunity to "view that particular route to the second floor."  (Isolano: W. 117-18).  On cross-examination, Isolano testified that none of the witnesses saw Perez in the stationhouse before viewing him at the lineup.  (Isolano: W. 136-37).  When asked if Perez saw Paige and Paige saw Perez, and whether the two made eye contact, Isolano responded, "[n]ot to my knowledge."  (Isolano: W. 137).

Perez testified that when he entered the stationhouse for the lineup, he was in handcuffs and the two detectives who were with him "told [him] to stop and turn around" as he was

walking toward the elevator after entering.  (Perez: W. 248).  He testified that he entered the stationhouse through the back door and "saw somebody in a wheelchair . . . coming from the front of the police station."  Id.  Perez testified that eventually he came to be about ten feet away from the person in the wheelchair.  (Perez: W. 249).  He also testified that one detective was "holding [his] arm, grabbing [his] arm" and that he was handcuffed "from the back."  (Perez: W. 250).  He testified that he made eye contact with the person in the wheelchair for "[c]lose to a minute."  Id.  The person in the wheelchair did not say anything or make any gestures, according to Perez, but "[h]is eyes opened up" when he saw Perez.  (Perez: W. 250-51).  According to Perez, after he made eye contact with the person in the wheelchair, Detective Isolano "told [Perez] to turn around."  Id.  Perez testified that, after telling him to turn around, Isolano "screamed to [the] other officers and told the other officers to turn [the person in the wheelchair] around."  (Perez: W. 251-52).  When prompted by Justice Uviller, Perez clarified that when the detective told him to turn around, he was "facing straight ahead towards the door," meaning "[t]he front door."  (Perez: W. 252-53).  That is, he was "looking straight ahead towards the door to come inside the precinct."  (Perez: W. 253-54).  Inside the elevator, Perez "asked [the detective] what was all that about" and the detective said "that was the victim."  (Perez: W. 255).

On cross-examination, Perez testified that, as he walked into the stationhouse from the back, Paige was simultaneously entering the building "from the front," though Perez did not know at that moment that Paige was "the victim."  (Perez: W. 256).  Perez did not recognize the person, and testified that he had never seen that person before that day.  Id.  Perez testified that when he first made eye contact with the person in the wheelchair, they were approximately 20 to 25 feet apart.  (Perez: W. 257-58).  Perez stated that they eventually came to be about ten feet apart.  (Perez: W. 260).  He testified that at that point, while he and the detective were waiting

4

for the elevator, the person in the wheelchair was looking right at him but did not say anything. Id. According to Perez, approximately 25 minutes passed between the event he had just described and the time he saw his attorneys, at which point he told them that he thought he had just seen the victim. (Perez: W. 261).

The People re-called Isolano as a rebuttal witness. (W. 269). Isolano testified that when he brought Perez into the stationhouse, Paige was visible in the waiting area but that Paige had his back to them, did not move, and never made eye contact with Perez. (W. 279-83). Paige had never indicated to Isolano that Paige had seen Perez prior to the lineup. (Isolano: W. 284). Isolano testified that at some point Perez said, "[t]his guy is in a wheelchair?" to which Isolano responded, "[y]es, he is," prompting Perez to say, "[t]hat's fucked up." (Isolano: W. 285). However, Perez never indicated what he meant by that statement. Id. Isolano also testified that no attorney ever told him that Perez had seen the victim. (Isolano: W. 286). Isolano testified that he only told Perez to "[f]ace the elevator" when they entered the building and did not call out to anyone to turn somebody around. (Isolano: W. 290). According to Isolano, the elevator opened up about twenty seconds after the time he and Perez entered the building. Id. Isolano testified that when he told Perez to face the elevator, Isolano had already seen the person in the wheelchair. (Isolano: W. 290-91). Isolano testified that the person in the wheelchair never told him at any time that he had seen Perez in the precinct. (Isolano: W. 291).

On rebuttal cross-examination, Isolano testified that he misunderstood a prior question asking whether, from where the witnesses were situated in the stationhouse, they would have had an opportunity to view Perez's route to the second floor. He had answered "no" to this question earlier in the hearing, but on cross-examination, he agreed that he could see the lobby where Paige was sitting as he entered the stationhouse with Perez. (Isolano: W. 299-302). He testified

5

that he did not tell Perez to stop and turn around; nor did he tell other officers to turn Paige around.  (Isolano: W. 304).

Justice Uviller issued a written decision denying the motion to suppress in which she credited the testimony of Isolano.  Resp. App. Br. 10.[2]  The judge specifically credited Isolano's testimony that Paige's wheelchair was facing away from Perez and that Paige was not in a position to view Perez before the lineup.  Id.

B.  The Motions to Admit Expert Testimony

On November 30, 2007, Perez filed a motion that sought, inter alia, permission to call an expert witness at trial to provide testimony "on the subject of the inherent unreliability of eyewitness identifications."  Def. App. Br. at 13.[3]  The court "denied the motion, but explained it should be renewed at the outset of trial."  Id.  On June 11, 2008, just prior to the start of trial, Perez filed a renewed motion to admit this expert testimony.  Id.  Justice Edward J. McLaughlin, who was presiding over Perez's trial, denied the motion orally on June 12, 2008, noting that it was not a "one witness identification case" and that the case did not meet the standards set by the New York Court of Appeals for the admission of such testimony.  See Transcript of Pre-Trial Proceedings Before the Honorable Edward J. McLaughlin, held June 12, 2008 (annexed to Gill

---

[2]  The Court has not been able to obtain a copy of the order denying suppression.  Nor has the respondent.  See Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed July 17, 2013 (Docket # 14) ("Resp. Mem."), 9, n.5.  Accordingly, we cite to the district attorney's brief in the Appellate Division as to Justice Uviller's decision on the suppression motion.  Defendant's brief on appeal acknowledged that "the trial court 'credited' the detective over Mr. Perez."  Def. App. Br. at 38.

[3]  Respondent has not been able to obtain a copy of this motion.  Resp. Mem. at 25, n.8.  Accordingly, we have cited to the defendant's brief on appeal to describe its contents and disposition.

Decl.), 4-6.[4]

C. <u>The Jury's Verdict</u>

The jury convicted Perez of robbery in the first degree and robbery in the second degree but acquitted him of attempted murder in the second degree and assault in the second degree. (Tr. 593-94).

D. <u>The Motion to Set Aside the Verdict and Sentence</u>

Subsequent to the jury's verdict but prior to sentencing, Perez, through counsel, filed a motion to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30(3). <u>See</u> Motion to Set Aside Verdict Pursuant to N.Y. Crim. Proc. Law § 330.30(3), filed Sept. 17, 2008 (annexed as Ex. B to Gill Decl.) ("330 Motion").[5] The motion argued that Perez's conviction "was based, in material part, on the testimony of Thomas Braunson, who claimed to have witnessed Mr. Perez next to Mr. Paige at the time of the shooting." <u>Id.</u> at 3, ¶ 4. The motion stated that "[n]ew evidence has been discovered since the conclusion of the trial" and that "[i]n the afternoon of September 18, 2008, [counsel for Perez] received an unsolicited voice mail message from a man who identified himself as David Williams, an [emergency medical technician] who was off-duty

_____

   [4] The transcript of this pretrial ruling is contained in Docket # 15-5 starting at ECF page "1 of 14."

   [5] New York Crim. Proc. Law § 330.30 provides, in relevant part, that

   [a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon [the ground that] . . . [t]hat new evidence has been discovered since the trial which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant..

<u>Id.</u> § 330.30(3).

in the vicinity of the shooting."  Id. at 3-4, ¶ 5.  According to the motion

> [t]he caller stated that he was with Mr. Braunson at the time of the shooting and
> observed Mr. Braunson's whereabouts.  The caller stated that at the time of the
> shooting, he and Mr. Braunson were not in a position to observe the scene of the
> shooting, and could only hear gunshots.  The caller stated that, as an off-duty
> EMT, he did not have his equipment or gloves, and did not become involved.
> The caller stated that he had the opportunity to observe Mr. Braunson and "I
> know he wasn't there."  In addition, the caller stated that Mr. Braunson was also
> "under the influence at the time."

Id. at 4, ¶ 6.  Counsel stated he had "made repeated attempts to contact Mr. Williams at the

number that he provided, all of which were unsuccessful."  Id. at 4, ¶ 7.  The motion argued that

this "new evidence creates a probability that, had it been received at trial, the verdict could have

been more favorable to defendant."  Id. at 4, ¶ 9.  It continued that "[i]ndeed, absent the

testimony of Mr. Braunson, the only evidence that purports to connect Mr. Perez with the

incident is the uncorroborated testimony of the complainant."  Id.  Counsel for Perez raised the

motion before Justice McLaughlin at the sentencing hearing.  At that time, counsel requested "an

adjournment to investigate this person to locate."  (S. 6).  Counsel stated he was requesting an

adjournment of the sentencing "to determine whether there is any substance to these allegations

on the part of Mr. Williams" and "with a view toward requesting a hearing with the court at

which [counsel] would ask Mr. Williams to testify as to the statements that are reflected in this

voice message."  (S. 6-7).  Justice McLaughlin sought clarification from counsel as to whether

the number left by Mr. Williams was not a functioning number, or whether Mr. Williams was

simply unavailable when counsel for Perez tried to reach him.  (S. 8-9).  After concluding that

the number was not functioning and that counsel "chose not to tell [him]" this, Justice

McLaughlin denied the motion.  (S. 10).  He felt that counsel's use of the term "unsuccessful,"

see 330 Motion at 4, ¶ 7, left "the impression that Mr. Williams, the hard working individual,

probably was at work or out doing charitable work" and questioned how the use of this term was "a substitute for telling [him] that the phone number that Williams left was not a working number." (S. 8-9). He also stated that the evidence was not "newly discovered" and that if the person identified as Williams really existed, a matter the judge questioned, Williams would have made efforts to reach counsel again. (S.10-12). Accordingly, the judge denied the motion. (S. 10).

Justice McLaughlin sentenced Perez as a second violent felony offender to determinate sentences of 25 years on the first-degree robbery charge and 15 years on the second-degree robbery charge, to run concurrently, along with five years of post-release supervision. (S. 20-21).

E. Direct Appeal

On December 6, 2010, Perez, still represented by counsel, filed an appeal to the Appellate Division, First Department. See Def. App. Br. In his brief, Perez argued that 1) the trial court improperly denied the motion to admit expert testimony on eyewitness identifications; 2) the trial court erroneously upheld the lineup identification without hearing testimony from Paige; 3) the trial court violated N.Y. Crim. Proc. Law §§ 330.30 and 330.40 when it concluded, without an evidentiary hearing, that newly discovered exculpatory evidence was "designed to thwart" the sentencing;[6] and 4) the court should reduce Perez's maximum sentence of 25 years for robbery in the interests of justice. Def. App. Br. at 20-52.

On June 23, 2011, the Appellate Division affirmed Perez's conviction. People v. Perez, 85 A.D.3d 630 (1st Dep't 2011). In its decision, the court found that the trial court "properly

---

[6] Section 330.40 provides the procedure for making a motion under section 330.30.

exercised its discretion when it denied [Perez's] application to present expert testimony on eyewitness identification." Id. (citation omitted). It held that Perez was "not entitled to have the victim testify at the Wade hearing" because "[t]he hearing evidence did not raise a substantial issue about the constitutionality of the lineup that could only be resolved by the testimony of the identifying witness." Id. (citation omitted). It found "no basis for disturbing" the hearing court's decision to credit the detective's version of events leading up to the lineup over the version of events offered by Perez. Id. With respect to the section 330.30 motion, the court held that "[t]he trial court properly exercised its discretion when it denied, without a hearing, [Perez's] motion to set aside the verdict on the ground of newly discovered evidence." Id. The court reasoned that Perez "presented nothing more than an attorney's affirmation quoting an incredible voicemail message left by a person who never spoke to the attorney directly and who provided a nonworking phone number as his only contact information." Id. at 630-31. Finally, the court "perceive[d] no basis for reducing the sentence." Id.

On July 21, 2011, Perez's counsel sought leave to appeal to the New York Court of Appeals, raising his claims about the expert testimony and the Wade hearing issues. See Letter from Jason B. Sherry, Esq. to the Honorable Jonathan Lippman, dated July 21, 2011 (annexed as Ex. F to Gill Decl.) ("Court of Appeals Ltr."). The letter did not raise the claim that the trial court erroneously denied Perez's motion pursuant to N.Y. Crim. Proc. Law § 330.30(3) or the sentencing claim. See id. On November 30, 2011, Perez's application for leave to appeal was denied. People v. Perez, 17 N.Y.3d 955 (2011).

E. The Instant Petition for a Writ of Habeas Corpus

Perez filed this petition pro se on February 2, 2013. See Pet. The petition raises three issues: (1) whether the motion to admit expert testimony was properly denied; (2) whether the

10

line-up identification was improperly upheld; and (3) whether the trial court "violated" N.Y.

Crim. Proc. Law §§ 330.30 and 330.340.  Pet. at 5-6.  Respondent filed papers opposing the

petition on July 17, 2013.  See Resp. Mem.; Gill Decl.  Perez has not filed a reply.

II.  APPLICABLE LAW

    A.  Legal Standard for Petitions Brought Pursuant to 28 U.S.C. § 2254

    A petition for a writ of habeas corpus may not be granted with respect to any claim that

has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

    For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it

must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the

substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v.

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in

its decision to indicate that the claims were decided on anything but substantive grounds," a

claim will be considered "adjudicated on the merits" even if the state court fails to mention the

federal claim and cites no relevant federal case law.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir.

2001); accord Harrington v. Richter, 131 S. Ct. 770, 784–85 (2011) ("When a federal claim has

been presented to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary.") (citation omitted); see also id. at 784 (section 2254(d)

deference applies even "[w]here a state court's decision is unaccompanied by an explanation"). Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the state court's application must have been unreasonable — a standard that is met only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786; accord id. ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable").  In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question."  Brisco v. Ercole, 565 F.3d 80,

89 (2d Cir. 2009).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment."  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law."  Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief."  Id. at 106-07 (citation omitted).  Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer" to the question presented in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision can be neither contrary to nor an unreasonable application of clearly established federal law.  See Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citations and internal quotation marks omitted).

B.  Exhaustion

"Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it

appears that . . . the applicant has exhausted the remedies available in the courts of the State.").

The Supreme Court has held:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005). Thus, a petitioner is required to have presented each claim to all available levels of the state courts. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("[T]he prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review.")) (internal quotation marks and citations omitted). The petitioner must also have fairly presented the "federal nature" of each claim to the state courts. Id.; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Rosa v. McCray, 396 F.3d 210, 217 (2d Cir. 2005).

III. DISCUSSION

We now discuss each of the claims in Perez's petition.

A. Expert Evidence on Eyewitness Testimony

Perez argues that "[t]he trial court improperly denied the defense's motion to admit expert testimony on eyewitness identifications in a case resting almost exclusively on eyewitness testimony, one critically impeached, the other with little opportunity to identify the assailant." Pet. at 5. Perez elaborates that

> [t]he prosecutions [sic] case against Victor Perez consisted almost entirely of the eyewitness identification by the complainant Rodney Paige and the testimony of the prosecution's deal-making, career criminal cooperating witness, [Braunson].[7]

_____

[7] While Perez's petition uses the name "Joshua Bermudez" here, it is clear that he intends to refer to Thomas Braunson.

14

> The witness issue was central and there was no meaningful corroborating evidence. The complainant had the last opportunity to identify the third assailant, allegedly Mr. Perez, whom he observed while face down and having been shot several times. Mr. Braunson was blocks away when the shooting occurred.

Id.

Respondent argues that this claim is "unexhausted because [Perez] only presented it as a state law claim." Resp. Mem. at 24. We agree. The only possible federal claim that could be intended by the petition is a due process violation, as the Supreme Court has held that the ability to present witnesses is a "fundamental element of due process law." Taylor v. Illinois, 484 U.S. 400, 409 (1988) (quoting Washington v. Texas, 388 U.S. 14, 19 (1967)); accord Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right . . . . ") (citing Taylor, 484 U.S. at 408–09). Notably, proving such a violation entails a significant burden. As the Second Circuit has noted, "[i]n order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)).

Perez, however, never presented his complaints about the failure to allow expert testimony to the state courts in terms of any federal constitutional right. Instead, he raised it only as an evidentiary error under state rules regarding the admission of such testimony. This was insufficient to exhaust the claim for purposes of federal habeas review. The Second Circuit has noted that while it is not necessary to cite "chapter and verse of the Constitution," a petitioner must still "apprise the [state] court of the constitutional nature of [the petitioner's] claims." Smith, 411 F.3d at 348 (citing Daye v. Attorney General of New York, 696 F.2d 186,

194 (2d Cir. 1982) (en banc)) (internal quotation marks omitted).  The Second Circuit has noted the following indirect methods of fairly presenting the constitutional nature of a claim to the state courts:

> (a) reliance on pertinent federal cases employing constitutional analysis,
> (b) reliance on state cases employing constitutional analysis in like fact situations,
> (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and
> (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. (citation omitted).  Thus, in a case involving a habeas challenge to an allegedly erroneous exclusion of evidence, the "relevant inquiry" is whether the claim that the exclusion of evidence "was erroneous under New York law was enough to alert the [state appellate] court of [the petitioner's] claim that it also denied him a meaningful opportunity to present a defense." Id. at 349 (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973)).

Looking to Perez's letter seeking leave to appeal to the Court of Appeals, we note that it argued that the exclusion of the proffered expert testimony contravened New York state case law articulating when the exclusion of such testimony would constitute an abuse of the trial judge's discretion.  See Ltr. to Court of Appeals at 5-7.[8]  The letter never suggested that the trial court's decision to exclude the testimony in this case violated Perez's federal constitutional rights.  Nor did the manner in which this issue was presented in the letter call to mind a specific constitutional right or allege a pattern of facts within the mainstream of constitutional litigation.

---

[8]  We confine our analysis only to what Perez raised in his letter seeking leave to appeal to the Court of Appeals, and not what he raised in the Appellate Division, because "[t]o fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state." Bossett v. Walker, 41 F.3d 825, 828 (1994) (citing Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (internal quotation marks omitted)).  The result would not be any different, however, if his arguments to the Appellate Division were examined.

Similarly, the letter did not rely on any federal or state cases employing a federal constitutional analysis of the issue underlying this claim.  Instead, the cases cited uniformly addressed the question of whether state trial courts had abused their discretion in failing to admit expert testimony relating to the reliability of eyewitness identifications.  One state case that Perez's counsel cited, People v. LeGrand, 8 N.Y.3d 449 (2007), see Ltr. to Court of Appeals at 5, discussed the test of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).  But Frye dealt only with the question of whether expert testimony was "generally accepted in the scientific community" and not whether exclusion of such testimony would violate the constitution.

The letter's citations to United States v. Crews, 445 U.S. 463 (1980) and United States v. Wade, 388 U.S. 218 (1967), also do not help Perez because Crews addressed whether "an in-court identification of the accused by the victim of a crime should be suppressed as the fruit of the defendant's unlawful arrest," 445 U.S. at 465, and Wade discussed a criminal defendant's right to counsel vis-a-vis lineup identification procedures, 388 U.S. at 223-237.  While both cases make passing comments about the "vagaries" of human memory or eyewitness identification, the citation to these cases in the context of Perez's arguments was not  "enough to alert the court of [the petitioner's] claim that it also denied him a meaningful opportunity to present a defense."  Smith, 411 F.3d at 349; see also id. at 348 (finding claim not fairly presented to state courts where state cases cited to Court of Appeals involved separate, distinct constitutional rights from the one the petitioner alleged was violated in his case).  A case considering almost identical circumstances to those in Perez's case similarly concluded that a petitioner had not exhausted his claim regarding the exclusion of an expert witness on eyewitness identification when the issue had been presented to the New York state courts as a violation of New York case law.  See Young v. Conway, 761 F. Supp. 2d 59, 78 (W.D.N.Y.

17

2011).

Perez is procedurally barred from returning to the state courts to exhaust this claim.  See, e.g., Young, 761 F. Supp. 2d at 78-79; accord Ramos v. Sup't, Sing Sing Correctional Facility, 2013 WL 7046334, at *18 (S.D.N.Y. Sept. 19, 2013); Wynn v. Lempke, 2009 WL 982754, at *5 (S.D.N.Y. Apr. 10, 2009).  In such a situation, case law reflects that this unexhausted claim will be "deemed exhausted."  St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)).  In other words, the claim is "now exhausted because state remedies are no longer available" as Perez "has already taken his one direct appeal, and this claim is procedurally barred from consideration in a collateral attack on his conviction." Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (citing N.Y. Crim. Proc. Law § 440.10(2)(c).  "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."  Gray v. Netherland, 518 U.S. 152, 162 (1996). "In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'"  St. Helen, 374 F.3d at 184 (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).  Perez has provided no cause for not raising this claim in constitutional terms before all levels of the state courts.  Nor has he provided evidence that he is actually innocent.  Accordingly, any federal claim by Perez that the trial court erroneously excluded expert testimony on the reliability of eyewitness identifications is procedurally defaulted and must be denied for this reason alone.

Additionally, the claim would fail on the merits.  As noted, federal habeas corpus relief is only available when the state court decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law as determined by the Supreme Court of the United

States."  28 U.S.C. § 2254(d)(1).  As a multitude of cases have pointed out, there is no Supreme

Court law holding that a defendant in a criminal case has a federal constitutional right to call at

trial an expert in eyewitness identifications.  See, e.g., Hearns v. Artus, 2010 WL 2653380, at

*11 (E.D.N.Y. June 23, 2010) ("The Supreme Court has never addressed the issue of whether a

defendant has a constitutional right to present expert testimony on the subject of eyewitness

identification. Therefore, the Appellate Division cannot have unreasonably applied federal law in

rejecting [petitioner's] claim that the trial court erred in not permitting him to present such

testimony.") (citation omitted); Burwell v. Sup't of Fishkill Corr. Facility, 2008 WL 2704319, at

*6 (S.D.N.Y. July 10, 2008) ("No Supreme Court decision has held that the exclusion of expert

testimony on the reliability of eyewitness identifications violates a defendant's constitutional

rights."); Smith v. Smith, 2003 WL 22290984, at *13-14  (S.D.N.Y. Sept. 29, 2003)

("[A]lthough the decision to exclude [expert testimony on eyewitness identifications] was almost

certainly erroneous, it is not grounds for habeas corpus relief."); accord Mims v. Woods, 2008

WL 4458133, at *3 (E.D.N.Y. Oct. 2, 2008); Paccione v. New York, 353 F. Supp. 2d 358, 370

(E.D.N.Y. 2005).  Thus, the Appellate Division could not have unreasonably applied Supreme

Court law in rejecting Perez's claim.

   B.  Admission of the Lineup Identification

    Perez's petition states that "[w]ithout hearing testimony from the key eyewitness, the trial

court erroneously upheld a line-up identification in which Victor Perez was ushered past that

witness, who followed police instructions and never before identified the suspect."  Pet. at 5.

The petition elaborates:

    [t]he prosecution and defense agreed, with one exception, on the facts

19

> surrounding Victor Perez's line-up.  The parties agreed Perez was ushered alone, in handcuffs and under police escort through a room holding complainant, Mr. Paige; Mr. Paige had never previously identified Perez; the police organized the line-up procedure; Mr. Paige was aware that a suspect was in custody; both witnesses and Perez followed Police instructions; and it is undisputed that a clear line of sight existed between Mr. Paige and Mr. Perez.

Id. .

To the extent Perez is challenging Justice Uviller's factual determination that Paige did not encounter Perez at the stationhouse before the lineup, the challenge must fail because, under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct" and this presumption can be overcome by "clear and convincing evidence."  "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."  Shabazz v. Artuz, 336 F.3d 154, 161 (2d Cir. 2003) (citations omitted); accord Pizarro v. Conway, 2010 WL 5373899, at *5 (S.D.N.Y. Nov. 1, 2010) ("A credibility determination is the type of factual finding to which this Court must generally defer.").  The Second Circuit has characterized federal habeas review of state court factual findings as being of "extremely narrow scope."  Cotto v. Herbert, 331 F.3d 217, 233 (2d Cir. 2003).  Here, Perez has provided no basis on which to conclude that Justice Uviller's credibility determination at the Wade hearing was erroneous.

To the extent Perez is challenging the fact that Paige did not testify at the hearing, there is no evidence in the record that Perez actually sought to call Paige as a witness through a subpoena or other court process.  Instead, it appears that after the hearing was underway, Perez referred merely to the prosecutor's "duty" to call Paige as a witness based on Perez's own belief as to the need for Paige's testimony to "resolve[]" the credibility dispute.  See Def. App. Br. at 38.  The Court is unaware of any Supreme Court case that places a burden on the prosecutor to

call witnesses at a suppression hearing in such a situation.  Thus, the rejection by the state court of this claim could not have involved "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under 28 U.S.C. § 2254(d)(1).

        C.  <u>Newly-Discovered Evidence Claim</u>

Perez argues that "[t]he trial court violated NY CPL 330.30 & 330.40 when it concluded, without an evidentiary hearing, that newly discovered exculpatory evidence was 'designed to thwart' the sentencing."  Pet. at 6.  Respondent argues that Perez raised this claim in the state courts, "but only as [a] state law issue[]," and that, additionally, the claim is unexhausted because "[Perez] did not seek leave to appeal to the New York Court of Appeals" on this claim.  Resp. Mem. at 23.  Respondent argues further that "[t]hese unexhausted claims can be deemed exhausted but procedurally barred, because [Perez] has no state-court forum in which to raise the claim."  <u>Id.</u>

We agree.  Even if Perez's claim with regard to the newly-discovered evidence were deemed a federal claim cognizable on habeas review, it would be procedurally barred.  Although Perez pursued this claim in his appeal to the Appellate Division, <u>see</u> Def. App. Br. at 42-48, he did not pursue it in his application for leave to appeal to the Court of Appeals, <u>see</u>, <u>e.g.</u>, Ltr. to Court of Appeals at 1.  Importantly, the Second Circuit "generally . . . assume[s] that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below where those claims were not presented to the New York high court for review."  <u>Smith</u>, 411 F.3d at 345 (quoting <u>Galdamez v. Keane</u>, 394 F.3d 68, 74 (2d Cir. 2005) (internal quotation marks omitted)); <u>see also</u> <u>Grey</u>, 933 F.2d at 120 ("For a federal court to hold that a state court had the opportunity to rule on a constitutional

21

claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.").

Thus, this claim must be deemed exhausted and procedurally defaulted for the same reasons that the claim of erroneous exclusion of expert testimony is deemed exhausted and procedurally defaulted.  See section III.A above.  Perez has not demonstrated cause for this default or offered proof of actual innocence.  As a result, this claim should be denied.

IV.  CONCLUSION

For the foregoing reasons, Perez's petition should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. William Pauley, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Pauley.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: February 5, 2014
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Victor Perez
08-A-5121
Five Points Correctional Facility
P.O. Box 119
Romulus, NY 14541

Counsel by ECF

23